FILED
2023 Sep-28  AM 11:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

|  |  |  |
|---|---|---|
| STATE AUTO PROPERTY & CASUALTY INSURANCE CO., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO.: 3:22-cv-1399-MHH |
| JERRY TIDWELL CONSTRUCTION, INC., *et al.*, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This is a declaratory judgment action. Plaintiff State Auto Property & Casualty Insurance Co. has asked the Court to determine whether the company owes its insured, Jerry Tidwell Construction Inc., a duty to defend and a duty to indemnify Tidwell and Farm Structures LLC, a limited liability company solely owned by Tidwell, in a state court action pending against Tidwell and Farm Structures in the Circuit Court of Lauderdale County, Alabama. (Doc. 1, p. 3, ¶ 9).[1] Tidwell and Farm Structures have moved to dismiss this action; they argue that the Court lacks jurisdiction over this matter because State Auto has not adequately pleaded facts to

---

[1] In addition to Tidwell and Farm Structures, State Auto named as defendants in this declaratory action the plaintiffs in the Lauderdale County action, Aviagen, Inc. and Aviagen North America, Inc. (Doc. 1, pp. 1–2, ¶¶ 2–5).

1

support subject matter jurisdiction. Alternatively, Tidwell and Farm Structures argue that the Court should abstain from exercising jurisdiction over this matter.

In their motion to dismiss, Tidwell and Farm Structures have not cited the rule under which they ask the Court to dismiss this action. Generally, challenges to subject matter jurisdiction arise under Rule 12(b)(1) of the Federal Rules of Civil Procedure. FED. R. CIV. P. 12(b)(1) (providing "lack of subject-matter jurisdiction" as a defense to a claim for relief); *see Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008); *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 808–09 (11th Cir. 2003). Accordingly, the Court analyzes the jurisdictional arguments in the motion to dismiss pursuant to Rule 12(b)(1).

## I.

Attacks on subject-matter jurisdiction under Rule 12(b)(1) may be either facial or factual. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). "Facial attacks to subject matter jurisdiction require the court merely to look and see if the plaintiff's complaint has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335–36 (11th Cir. 2013) (citing *Carmichael*, 572 F.3d at 1279). "By contrast, a

factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Stalley*, 524 F.3d at 1233 (citing *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007)). In considering extrinsic evidence, a district court is "'free to weigh the facts' and is 'not constrained to view them in the light most favorable' to the plaintiff." *Houston*, 733 F.3d at 1336 (quoting *Carmichael*, 572 F.3d at 1279).

## II.

In its complaint, State Auto alleges that it issued two preferred business policies issued to Tidwell. (Doc. 1, pp. 4–3, ¶ 16). State Auto asserts that "Farm Structures is not an insured under the State Auto Policies, but State Auto has provided a defense to Farm Structures to date as a courtesy." (Doc. 1, p. 4 n. 1). According to State Auto, the two preferred business policies include commercial general liability coverage and commercial umbrella coverage and "contain the same terms, conditions, and limitations." (Doc. 1, p. 13, ¶ 20; *see also* Doc. 1, p. 5 n. 2). Pursuant to a reservation of rights, State Auto is providing a defense to Tidwell and Farm Structures in the Circuit Court of Lauderdale County, Alabama in *Aviagen, Inc. v. Jerry Tidwell Construction, et al.* (Doc. 1, p. 4, ¶ 14).

In the underlying state court action, Aviagen alleges that Tidwell and Farm Structures improperly constructed poultry houses for Aviagen and associated growers.  (Doc. 1-1, p. 3, ¶ 1).  According to Aviagen, in late 2018, it learned of a "partial collapse of trusses" of a poultry house owned by one if its growers.  (Doc. 1-1, p. 6, ¶ 17).  An inspection purportedly revealed that Tidwell and Farm Services had "engaged in wanton, negligent and/or deficient construction techniques" with respect to the bracing between the trusses in approximately 375 poultry houses.  (Doc. 1-1, pp. 6–7, ¶ 17).  Aviagen alleges it will cost approximately $3.7 million to "add[] the bracing on all houses on which it was omitted by [Tidwell and Farm Structures]."  (Doc. 1-1, pp. 8–9, ¶ 19).

Aviagen also contends that it and some of its growers have had to address premature rotting of posts installed by Tidwell and Farm Structures in approximately 59 poultry houses because of Tidwell and Farm Structures' alleged use of "improper materials . . . and/or poor workmanship in the installation."  (Doc. 1-1, pp. 9–10, ¶¶ 21–23).  Aviagen asserts that "estimates of repair costs are as high as $125,000 per house, depending on the number of posts that have to be repaired based on professional guidance."  (Doc. 1-1, pp. 10–11, ¶ 22).

In its state court complaint, Aviagen asserts claims for breach of contract, promissory estoppel, negligence/wantonness, misrepresentation and suppression of material fact, promissory fraud, and unjust enrichment.  (Doc 1-1).  Aviagen seeks

compensatory, consequential, and incidental damages, interest, costs, litigation expenses, and attorney's fees.  (Doc. 1-1, pp. 12–17).  Aviagen also seeks an award of the disgorgement of Tidwell's and Farm Structures' profits.  (Doc. 1-1, p. 17).

According to State Auto, it is "only obligated to defend against claims for 'property damage' that are 'caused by an occurrence,'" and Aviagen's allegations of "improper construction or remediation to improper construction" are not covered under the polices.  (Doc. 1, p. 14, ¶¶ 22, 24).  State Auto asserts that the "Business Risk Exclusions" in the policies apply based on Aviagen's allegation that "Tidwell and/or Farm Structures improperly constructed the poultry houses, including the trusses contained and the posts therein," and that the "Fungi Exclusion Endorsement" applies based on Aviagen's allegations related to rotting posts. (Doc. 1, pp. 15-17).

Tidwell and Farm Structures contend that because the state court action remains pending, State Auto's request for a declaration regarding its obligation to indemnify Tidwell and Farm Structures if either should have to pay a settlement or a judgment is premature.  Tidwell and Farm Structures also argue that State Auto

has not established that the amount in controversy between the parties exceeds $75,000, so that the Court lacks diversity jurisdiction under 28 U.S.C. § 1332.[2]

### III.

### Subject Matter Jurisdiction

Tidwell and Farm Structures challenge subject matter jurisdiction on two grounds, one constitutional and the other statutory. Because courts should avoid constitutional issues when other grounds are available for relief, the Court begins with the defendants' statutory challenge to subject matter jurisdiction. *See Williamson v. Brevard Cnty.*, 928 F.3d 1296, 1316–17 (11th Cir. 2019) (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.").

Tidwell and Farm Structures argue that this Court lacks subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because State Auto has not

---

[2] Aviagen has filed a motion to join the motion to dismiss filed by Tidwell and Farm Structure and to submit additional arguments for abstention. (Doc. 20). State Auto argues that the Court should disregard Aviagen's joinder motion because Aviagen already has filed an answer, thus forfeiting the opportunity to seek dismissal. (Doc. 25, p. 14). Tidwell and Farm Structure move to dismiss based on lack of subject matter jurisdiction, an issue that cannot be forfeited or waived. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428 (2011). The Court's discussion of the issues that Tidwell and Farm Structures have raised applies to all defendants in this action.

established that more than $75,000 is in controversy.[3]  Under § 1332, a federal court may exercise jurisdiction over state law claims if the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).  A plaintiff invoking diversity jurisdiction must establish that more than $75,000 is in controversy.  *McKinnon Motors*, 329 F.3d at 807.  When a plaintiff claims a "sufficient sum in good faith," a federal court must exercise jurisdiction under § 1332 unless it appears "to a legal certainty" that the amount-in-controversy requirement is not met.  *McKinnon Motors*, 329 F.3d at 807 (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–289 (1938)).  Alternatively, "where jurisdiction is based on a claim for indeterminate damages . . . the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum."  *McKinnon Motors*, 329 F.3d at 807.

"In a declaratory judgment action, for amount in controversy purposes, the value of . . . declaratory relief is the value of the object of the litigation measured

---

[3] The plaintiff and the defendants in this case are citizens of different states.  State Auto is an Iowa corporation with its principal place of business in Iowa.  (Doc. 1, p. 1, ¶ 1).  Therefore, State Auto is a citizen of Iowa.  Tidwell is an Alabama corporation with its principal place of business in Alabama and is the sole member of Farm Structures, which is an Alabama limited liability company.  (Doc. 1, pp. 1–2, ¶¶ 2–3).  Consequently, Tidwell and Farm Structures are citizens of Alabama.  Aviagen, Inc. and Aviagen North America, Inc. are both Delaware corporations with their principal place of business in Alabama.  (Doc. 1, p. 2, ¶¶ 4–5).  Therefore, the Aviagen defendants are citizens of Delaware and Alabama.  None of the defendants is a citizen of Iowa like State Auto.

from the plaintiff's perspective." *First Mercury Ins. Co. v. Excellent Computing Distributors, Inc.*, 648 Fed. Appx. 861, 864 (11th Cir. 2016) (per curiam) (alterations adopted) (internal quotation marks and citations omitted).  In other words, "'the value of declaratory relief is the monetary value of the benefit that would flow to the plaintiff if the relief he is seeking were granted.' Thus, when an insurer seeks a judgment declaring the absence of liability under a policy, the value of the declaratory relief to the plaintiff-insurer is the amount of *potential* liability under its policy." *First Mercury Ins.*, 648 Fed. Appx. at 865 (italics in *First Mercury*) (citation omitted).  In a decision that is binding on courts in the Eleventh Circuit Court of Appeals, the Fifth Circuit Court of Appeals held that in an insurer's declaratory judgment action concerning its obligation to its insured in an underlying lawsuit, the amount in controversy in the declaratory judgment action consists of "[t]he pecuniary value of the obligation to defend the separate lawsuit" and the potential payment due under the policy if the plaintiff in the underlying action succeeds on her claim.  *Stonewall Ins. Co. v. Lopez,* 544 F.2d 198, 199 (5th Cir. 1976).[4]  State

---

[4] Decisions of the former Fifth Circuit Court of Appeals issued before the close of business on September 30, 1981 are binding on courts in the Eleventh Circuit Court of Appeals.  *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Auto's potential liability under the policies it issued to Tidwell easily exceeds $75,000 in Aviagen's state court action against Tidwell and Farm Structure.[5]

---

[5] The defendants cite *Sullivan v. Everett Cash Mut. Ins. Co.*, 2023 WL 1521579, at *3–4 (11th Cir. Feb. 3, 2023) (per curiam), *Republic Vanguard Ins. Co. v. Russell*, 2021 WL 794464, at *3–4 (N.D. Ala. Mar. 2, 2021), and *AXIS Surplus Ins. Co. v. Valles*, 2018 WL 5617818, at *2 (N.D. Ala. Oct. 30, 2018), for the proposition that in determining the amount in controversy in an insurer's declaratory judgment action, a court "cannot consider the value of any potential indemnity liability arising from the Underlying Suit because the indemnification claim is unripe." (Doc. 15, p. 4; *see also* Doc. 29, p. 4). None of the cases the defendants cite are binding on this Court. As a matter of law, the Court must follow binding precedent.

As a matter of logic, the Court finds the amount-in-controversy analysis in *Stonewall Ins. Co. v. Lopez* and *First Mercury* sound. In binding precedent, the Eleventh Circuit has recognized this basic principle concerning a court's analysis of the amount in controversy under § 1332:

> What counts is the amount in controversy at the time of removal. It is less a prediction of "how much the plaintiffs are ultimately likely to recover," than it is an estimate of how much will be put at issue during the litigation; in other words, the amount is not discounted by the chance that the plaintiffs will lose on the merits. Potential developments, such as "[t]he possibility that the putative class will not be certified, or that some of the unnamed class members will opt out," are irrelevant to the jurisdictional analysis.

*So. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014) (citations omitted); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289–90 (1938) ("Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.") By analogy, potential developments in the underlying state court action in this case do not impact the amount in controversy analysis as that analysis is informed by Alabama law.

It has long been the rule under Alabama law that "[a]n insurance company has two general duties under a policy of insurance: a duty to defend and a duty to indemnify. The duty to defend is broader than the duty to indemnify." *Mid-Continent Cas. Co. v. Advantage Med. Electronics, LLC*, 196 So 3d 238, 243 (Ala. 2015). The duty to defend is very broad:

> "The insurer owes no duty to defend only if neither does the complaint against the insured allege a covered accident or occurrence nor does the evidence in the litigation between [the injured person] and the insured prove a covered accident or occurrence. If the allegedly injured person's complaint against the insured alleges or the evidence proves not only claims based on a covered accident or occurrence but also claims not based on a

In fact, the cost of defense alone in the underlying state court action exceeds $75,000.  Rhonda M. Craun, a Claims Unit Manager for State Auto, has provided a

---

> covered accident or occurrence, the insurer owes a duty to defend at
> least the claims based on a covered accident or occurrence."
>
> This broad duty on the part of an insurer to defend an insured arises out of the
> principle that an ambiguous insurance policy is to be construed liberally in favor of
> the insured and strictly against the insurer.

*Hartford Cas. Ins. Co. v. Merchs. & Farmers Bank*, 928 So. 2d 1006, 1010–11 (Ala. 2005)
(alteration in original) (citations omitted).

Therefore, if State Auto successfully establishes that it does not owe Tidwell and Farm Structures
a duty to defend in the underlying action, then State Auto, as a matter of Alabama law, likewise
does not have a duty under the insurance contracts to indemnify Tidwell or Farm Structures if there
is a settlement or a verdict for the plaintiffs in the underlying state lawsuit.  The Seventh Circuit
made the point concisely in *Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing
Ctr., Inc.*:

> Where, as here, the duty to defend is broader than the duty to indemnify, a finding
> of no duty to defend necessarily precludes a finding of a duty to indemnify. As the
> Illinois Supreme Court stated in *Crum & Forster v. Resolution Trust Corp.*:
>
> > "In cases such as the instant case where no duty to defend exists and
> > the facts alleged do not even fall *potentially* within the insurance
> > coverage, such facts alleged could obviously never *actually* fall
> > within the scope of coverage. Under no scenario could a duty to
> > indemnify arise. Clearly, where there is no duty to defend, there will
> > be no duty to indemnify. . . ."

566 F.3d 689, 693 (7th Cir. 2009) (emphasis in original) (quoting 620 N.E.2d 1073, 1081 (1993)).
By alleging that it owes Tidwell and Farm Structures no duty to defend the companies in the state
court action, under Alabama law, State Auto necessarily is asserting that it is obligated neither for
defense costs nor for indemnification of a possible favorable result for Aviagen in the state court
action, putting in controversy all benefits available to its insured under the policies.

The Court observes that even if an insurer does not have a duty to defend under the allegations of
a state court complaint and facts available to the insurer upon investigation, an insurer must keep
abreast of developments in the underlying action to discern whether an amendment to a state court
complaint or newly discovered evidence would trigger a duty to defend.  *See Tapscott v. Allstate
Ins. Co.*, 526 So. 2d 570, 574 (Ala. 1988).

declaration in which she explains that State Auto anticipates the cost to defend Tidwell and Farm Structures "through trial and appeal will exceed $100,000" based on the filings in the underlying state action and "information . . . from defense counsel, including budgeting." (Doc. 25-1, p. 3, ¶ 4). Such evidence, "combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations" is sufficient to show that the cost to defend Tidwell and Farm Structures in the underlying state action satisfies the jurisdictional minimum. *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754–55 (11th Cir. 2010).[6]

Because the plaintiff and the defendants are from different states and the amount in controversy exceeds $75,000, the Court may exercise jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

Turning then to the constitutional issue, Tidwell and Farm Structures contend that because there is no judgment yet in the underlying state action, State Auto's duty to indemnify argument is not ripe, and "the lack of ripeness means that there is no Article III case or controversy" for this Court to adjudicate. (Doc. 15, p. 2). The contention puts the cart before the horse.

---

[6] The defendants argue that State Farm's estimation of its anticipated legal fees is too speculative to establish the amount in controversy and cite cases in which courts have declined to consider speculative attorney's fees when determining whether the amount in controversy is met. (Doc. 27, pp. 3–4; Doc. 29, pp. 8–10). The cases cited by the defendants do not discuss attorney's fees within the duty-to-defend context and are thus not persuasive.

In its complaint, State Auto identifies several provisions in the policies that it issued to Tidwell and argues that those provisions remove the allegations in the state court complaint from "coverage under the Policies" such that State Auto "has no duty to defend or indemnify Tidwell or Farm Structures in connection with the Underlying Suit . . ." (Doc. 1, pp. 14–17). State Auto requests, among other things, a declaration that the company has no duty to defend Tidwell or Farm Structures in the state court lawsuit. (Doc. 1, p. 17). That State Auto may not be entitled to declaratory relief regarding its duty to indemnify until the underlying state court action is resolved does not warrant dismissal of State Auto's claims concerning its duty to defend. Should the record establish that State Auto has a duty to defend Tidwell and Farm Structures in the state court action, then the Court may stay a determination of the duty to indemnify until the state court action is resolved, or the Court may dismiss the request for a declaration as to indemnification without prejudice. Should the record establish that State Auto has no duty to defend Tidwell and Farm Structures in the state court action, then, as a matter of Alabama law, State Auto will not have a duty to indemnify the defendants on the current record in the state litigation. *See* footnote 5.

Accordingly, the Court finds that it has subject matter jurisdiction over State Auto's declaratory judgment action.

## Abstention

Alternatively, the defendants argue that, even if there is subject matter jurisdiction, the Court should abstain from exercising jurisdiction over this declaratory judgment action.

The Declaratory Judgment Act does not confer an absolute right to litigants; the Act "vests district courts with discretion to dismiss declaratory suits when, in their best judgment, the costs outweigh the benefits. Its language is spare, but direct: federal courts '*may* declare the rights and other legal relations of any interested party seeking such declaration.'" *James River Ins. Co. v. Rich Bon Corp.*, 34 F.4th 1054, 1059 (11th Cir. 2022) (italics in *James River*) (quoting 28 U.S.C. § 2201(a)).[7]  The Supreme Court has stated that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)).  In those instances, "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Ameritas Variable Life Ins. Co. v. Roach*, 411

---

[7] *See also Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (stating that the Declaratory Judgment Act "gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so").

F.3d 1328, 1330 (11th Cir. 2005) (alteration in *Ameritas*) (quoting *Brillhart*, 316 U.S. at 495).

In deciding whether to exercise jurisdiction over an action brought under the Declaratory Judgment Act, a district court must determine "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." *Wilton*, 515 U.S. at 282 (quoting *Brillhart*, 316 U.S. at 494).  In *Ameritas*, the Eleventh Circuit provided guideposts for district courts to consider in deciding whether to abstain from or exercise jurisdiction in a suit brought under the Declaratory Judgment Act.  The factual background of *Ameritas* provides context for the factors the Eleventh Circuit identified.  In *Ameritas,* the federal declaratory judgment action and the "parallel" state action both concerned the interpretation of a life insurance policy.  After the insurer filed suit in federal court "seeking a declaration of the rights and obligations of the parties under the Policy," the policy beneficiary sued the insurer, the agent who helped the decedent apply for the policy, and the insurance agency in state court, asserting a claim for breach of the insurance contract and claims concerning negligence of the insurer, the agent, and the insurance agency. *Ameritas*, 411 F.3d at 1330.  Against that backdrop, the Eleventh Circuit identified nine factors for a district court to evaluate in deciding whether to abstain from a declaratory judgment action:

(1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

(2) whether the judgment in the federal declaratory action would settle the controversy;

(3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;

(5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Ameritas*, 411 F.3d at 1331.

In *James River Ins. Co.*, the Eleventh Circuit stated that the nine *Ameritas* factors are not exclusive, that "no single [*Ameritas*] factor is controlling," and that the inquiry is properly characterized as a "'totality-of-the-circumstance analysis.'" 34 F.4th at 1060 (first citing *Ameritas*, 411 F.3d at 1331, and then quoting *Nat'l Tr. Ins. Co. v. S. Heating & Cooling Inc*, 12 F.4th 1278, 1285 (11th Cir. 2021)). As in

this case—and unlike *Ameritas*—the insurer in *James River* filed a federal action seeking a declaration of the company's obligations under the policy it issued to its insured after a patron of the insured sued the insured in state court.  In his concurring opinion in *James River*, Judge Brasher observed:

> [I]nsurers reasonably expect the federal courts to resolve run-of-the-mill disputes about their duties to defend and indemnify against claims made in an underlying tort action.  In fact, allowing "a declaratory action by an insurer to establish nonliability under casualty insurance was one of the prime purposes of the Declaratory Judgment Act."
>
> . . . Whenever a liability insurer sues its insured for a declaration of its duties to defend and indemnify (or vice versa), there will be a pending or threatened related lawsuit—often in state court—between the insured and a third party. . . .
>
> In weighing the *Ameritas* factors in a dispute between a liability insurer and its insured, I suggest district courts focus on whether there is anything unique or extraordinary that differentiates their case from the mine run of liability insurance disputes. For example, one could ask: Does the State have a stronger interest in deciding this particular state-law issue in state court than it normally would in a state-law liability insurance dispute? Is there a state-specific public policy at play that is not present in most other insurance disputes? Is there some important factual dispute in the state litigation that would be unusually dispositive in the declaratory judgment action? . . .
>
> [A]s the Court's opinion suggests, there is nothing special about this case that warrants declining jurisdiction. Far from it. The district court can resolve this dispute by interpreting the terms of the insurance contract—specifically, the policy's bodily injury limits, a worker's compensation exclusion, and an employer liability exclusion, which are all common features of commercial insurance policies. Federal courts routinely answer questions like these.

*James River*, 34 F.4th at 1062–63 (Brasher, J., concurring) (citations omitted).

This case falls within the "mine run of liability insurance disputes" that insurers "reasonably expect the federal courts to resolve."  There is nothing unique or extraordinary that cautions against the exercise of federal jurisdiction over this coverage dispute.  This case, like other coverage disputes, requires a comparison of the underlying state court complaint and any facts available through investigation with the language of the State Auto policy to determine whether the policy clearly and unambiguously precludes coverage of the underlying construction dispute to determine whether State Auto has a duty to defend Tidwell and Farm Structures in the Lauderdale County action.  The principles of Alabama law that govern the interpretation of the State Auto policies are well-settled.[8]  As in any coverage dispute, resolution of the dispute will not resolve the underlying state action, though the coverage decision may influence settlement negotiations in the underlying action.  A decision in this case will not have a preclusive effect in the state-court action.

The defendants argue that rather than having this Court resolve the coverage issues, a "superior option" is for State Auto to refile its declaratory judgment action in an Alabama court, "allowing the state court to efficiently address the overlapping

---

[8] The defendants argue that this declaratory judgment action involves unsettled questions of state law related to the "Business Risk Exclusions" and "Fungi Exclusion Endorsement" in the policies. (Doc. 29, p. 13).  Assuming *arguendo* that the defendants are correct, this does not necessarily weigh in favor of abstention because "federal courts routinely decide novel state-law issues in diversity actions."  *Nat'l Tr. Ins. Co.*, 12 F.4th at 1289.

issues and also decide any separate, independent issues State Auto wishes to submit." (Doc. 20, p. 13).  The fact that State Auto has the option to file a declaratory judgment action in state court does not make such an option "better or more effective."   This Court is equipped to adjudicate the coverage issues in this declaratory judgment action; federal courts routinely apply state law and resolve issues like the ones presented in this action.  *James River Ins. Co.*, 34 F.4th at 1063 (J. Brasher, concurring).

In short, "there is nothing special about this case that warrants declining jurisdiction. Far from it. [This Court] can resolve this dispute by interpreting the terms of the insurance contract—specifically," whether Aviagen's allegations and the damages sought are covered under the State Auto policies so as to trigger State Auto's duty to defend Tidwell and Farm Structures under Alabama law.  *James River*, 34 F.4th at 1062–63 (Brasher, J., concurring).  If there is a duty to defend, then the Court ultimately may have to decide the narrower question of whether State Auto has a duty to indemnify Tidwell and/or Farm Structures under Alabama law in the event of a result in favor of Aviagen in the Lauderdale County action.  That question too involves an application of Alabama law to interpret the State Auto policies.  On the record before it, the Court will not abstain from exercising its jurisdiction over this declaratory judgment action.

## IV.

For the reasons discussed in this opinion, the Court denies Tidwell's and Farm Structures' motion to dismiss.  Tidwell and Farm Structures' motion to stay and Aviagen's motion for joinder are moot.  The Clerk shall please TERM Docs. 15, 20, and 21.

**DONE** and **ORDERED** this September 28, 2023.

_____

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE